UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**PAMELA H.**

                        **Plaintiff,**

v.                                               5:20-CV-00304 (NAM)

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**[1]

                        **Defendant.**
_____

**Appearances:**

Howard Olinsky
Olinsky Law Group
250 South Clinton Street, Ste 210
Syracuse, NY 13202
*Attorney for the Plaintiff*

Candace Lawrence
Special Assistant United States Attorney
Social Security Administration
Office of the General Counsel
J.F.K. Federal Building, Room 625
Boston, MA 02203
*Attorney for the Defendant*

**Hon. Norman A. Mordue, Senior United States District Court Judge**

### MEMORANDUM-DECISION AND ORDER

**I.  INTRODUCTION**

      Plaintiff Pamela H. filed this action on March 18, 2020 under 42 U.S.C. § 405(g), challenging the denial of her application for social security disability ("SSD") benefits under the

---

[1] Plaintiff commenced this action against the "Commissioner of Social Security."  (Dkt. No. 1).  Kilolo Kijakazi became the Acting Commissioner on July 9, 2021 and will be substituted as the named defendant in this action.  Fed. R. Civ. P. 25(d).  The Clerk of Court is respectfully directed to amend the caption.

1

Social Security Act. (Dkt. No. 1). The parties' briefs are now before the Court. (Dkt. Nos. 19, 24). After carefully reviewing the administrative record, ("R," Dkt. No. 16), the Court remands the decision of the Commissioner.

## II. BACKGROUND

### A. Procedural History

Plaintiff applied for SSD benefits on April 24, 2017, alleging disability beginning October 1, 2003. (R. 77–78, 91). Plaintiff's initial claim was denied, and a hearing was held on January 31, 2019 before Administrative Law Judge ("ALJ") Jennifer Gale Smith; Plaintiff appeared and testified, as did a vocational expert. (R. 91, 30–57). On February 22, 2019, the ALJ issued a decision finding that Plaintiff was not disabled within the relevant time period. (R. 10–20). Plaintiff's request for review by the Appeals Council was denied on January 17, 2020. (R. 1–5). Plaintiff then commenced this action. (Dkt. No. 1).

### B. Plaintiff's Background and Testimony

Plaintiff was born in 1990 and was 13 years old as of the alleged onset date of disability. (R. 77). She has an eleventh-grade education and no significant work history. (R. 180, 210). She claimed to be unable to work due to: 1) Post Traumatic Stress Disorder ("PTSD"); 2) depressive disorder; 3) anxiety disorder; 4) bipolar disorder; 5) degenerative disc disease; 6) chronic thoracic spine pain; 7) cervicalgia; and 8) myofascial pain syndrome. (R. 77–78; 175–185).

Plaintiff testified that she has not worked in her adult life because of her mental and physical impairments. (R. 33). Plaintiff described severe, chronic pain in her mid and lower back, soreness in her foot from a bunionectomy, and tingling in her extremities. (R. 35–39, 48). Plaintiff also testified that she suffers from anxiety, depression, PTSD, and possibly borderline

personality disorder. (R. 39–42). As to physical impairments, Plaintiff testified that she can "lift 10, 15 pounds but not for a long period of time," she can walk for 15 to 20 minutes without pain, and she can sit without moving up to 30 minutes at a time. (R. 36–37). As to mental impairments, Plaintiff testified that her mind often goes blank, she has trouble concentrating, and she gets anxious around other people. (R. 39, 47). She takes medication including medical marijuana and a mood stabilizer to help with her physical and mental problems. (R. 45–46).

### C. Medical Records

During the relevant time period, Plaintiff has undergone a multitude of diagnostic tests, received treatment from numerous providers, and been assessed physically and mentally by various medical professionals. Given the voluminous nature of Plaintiff's medical records, the Court assumes familiarity with those described in the parties' respective briefs. The Court will discuss specific medical records in detail as necessary below.

### D. ALJ's Decision Denying Benefits

On February 22, 2019, the ALJ issued a decision denying Plaintiff's application for disability benefits. (R. 10–20). At step one of the five-step evaluation process, the ALJ determined that Plaintiff had not engaged in gainful employment since April 24, 2017, the application date. (R. 12).

At step two, the ALJ determined that Plaintiff had the following "severe" impairments: 1) a back impairment; 2) a neck impairment; 3) asthma; 4) obesity; 5) depression; 6) bipolar disorder; 7) anxiety; 8) panic disorder; 9) personality disorder; 10) PTSD; and 11) a history of substance abuse. (R. 12–13).

At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20

CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)." (R. 13). As to Plaintiff's physical impairments, the ALJ found that she did not satisfy the criteria for Disorders of the Spine, Listing 1.04, because Plaintiff "does not have compromise of a nerve root or the spinal cord." (R. 13). As to Plaintiff's mental impairments, the ALJ found that considered singly and in combination, they "do not meet or medically equal the criteria of listings 12.04, 12.066, 12.08, and 12.15." (R. 13). The ALJ found that Plaintiff had several "moderate" limitations in mental functioning but no "extreme" or "marked" limitations. (R. 13–15).

At step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. 416.967(a), with the following exceptions and limitations:

> [S]he can occasionally climb ramps/stairs and stoop to 75 degrees; and she can never climb ladders/ropes/scaffolds, balance, kneel, crouch or crawl. The claimant can frequently reach, handle, finger, push, pull and feel. The claimant should have no more than occasional, concentrated exposure to respiratory irritants such as dust, odors, fumes, gases and temperature extremes. She should work at simple, routine and repetitive tasks. The claimant should work in a low-stress job, defined as occasional decision-making, occasional judgment required and occasional changes in the work setting. She should work at goal-oriented work rather than production-pace-rate work. The claimant can have occasional contact with coworkers and supervisors but no contact with the public.

(R. 15). The Regulations define RFC as the most a claimant can do despite his or her physical and/or mental limitations. 20 C.F.R. §§ 404.1545, 416.945.

Next, the ALJ found that Plaintiff had no past relevant work or transferable job skills, was only 26 years-old, had a limited education, and could communicate in English. (R. 18–19). The ALJ asked a vocational expert whether jobs exist in the national economy for an individual with Plaintiff's age, education, work experience, and RFC. (R. 19). The vocational

4

expert testified that someone in Plaintiff's position could perform the requirements of jobs such as document preparer and addresser. (R. 19). Consequently, the ALJ concluded that Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, and that she was not disabled. (R. 19–20).

### III. DISCUSSION

#### A. Disability Standard

To be considered disabled, a claimant must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, the claimant's impairment(s) must be "of such severity that [she] is not only unable to do his previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

The Social Security Administration uses a five-step process to evaluate disability claims:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [her] [*per se*] disabled . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [she] has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

5

*Selian v. Astrue*, 708 F.3d 409, 417–18 (2d Cir. 2013) (quoting *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012)); *see also* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the initial burden of establishing disability at the first four steps; the Commissioner bears the burden at the last.  *Selian*, 708 F.3d at 418.

### B. Standard of Review

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine *de novo* whether Plaintiff is disabled.  Rather, the Court must review the administrative record to determine whether "there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citation omitted).

When evaluating the Commissioner's decision, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn."  *Selian*, 708 F.3d at 417 (citation omitted).  The Court may set aside the final decision of the Commissioner only if it is not supported by substantial evidence or if it is affected by legal error.  42 U.S.C. § 405(g); *Selian*, 708 F.3d at 417; *Talavera*, 697 F.3d at 151.  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447–48 (2d Cir. 2012) (quoting *Moran*, 569 F.3d at 112).

### C. Evaluating Medical Opinions

For claims filed after March 27, 2017, as is the case here, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion."  *Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules")*, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017);

*see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)–(c), 416.920c(a)–(c).  The ALJ is still required to "articulate how [she] considered the medical opinions" and "how persuasive [she] find[s] all of the medical opinions."  *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1).  The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," and an ALJ is required to "explain how [she] considered the supportability and consistency factors" for a medical opinion.  *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2).

### D. Analysis

Plaintiff challenges the ALJ's decision to deny her disability on the grounds that: 1) the RFC formulated by the ALJ is not supported by substantial evidence; and 2) there was not substantial evidence to support a finding of available jobs that she can perform.  (Dkt. No. 19). The Court will address each argument in turn.

#### 1. RFC Determination

First, Plaintiff contends that the RFC is not supported by substantial evidence because the ALJ gave improper weight to the opinions of Dr. Kalyani Ganesh, Dr. Cherilyn White, and Physician's Assistant ("P.A.") John Bradley Stevens.  (Dkt. No. 19, p. 24).

##### a) Dr. Ganesh

Dr. Ganesh examined Plaintiff on July 13, 2017 for Social Security.  (R. 572–74). Plaintiff complained of intermittent pain in her neck and lower back, constant middle back pain that extended to her legs, and pain from prolonged standing or sitting.  (R. 572).  Dr. Ganesh observed that Plaintiff was in no acute distress, had a normal gait, dressed herself, could mount

7

and dismount the table herself, could rise from a chair without difficulty, and could not squat. (R. 573). Dr. Ganesh observed limitations in Plaintiff's lumbar region, including flexion of 75 degrees and extension of 15 degrees, but normal range of motion in the cervical and thoracic regions and in her extremities. (R. 574). Dr. Ganesh noted that Plaintiff could complete many daily activities such as cooking, cleaning, laundry, shopping, showering, childcare, and getting dressed. (R. 572). Dr. Ganesh assessed that Plaintiff had no limitations for sitting, standing, and walking, and mild limitations for lifting, carrying, pushing, and pulling. (R. 574).

The ALJ found Dr. Ganesh's opinion to be persuasive, explaining that the limitations assessed by Dr. Ganesh were consistent with Dr. Ganesh's examination of Plaintiff, her "conservative course of treatment," and "her ability to live alone and perform most activities of daily living." (R. 16).

Plaintiff points out that the ALJ assessed her as "restricted to sedentary work despite finding the most persuasive opinion to be Dr. Ganesh's opinion of no limitation for sitting, standing or walking; and a mild limitation for lifting, carrying, pushing and pulling." (Dkt. No. 19, p. 26). According to Plaintiff, the ALJ failed to sufficiently connect Dr. Ganesh's opinion to the RFC. (*Id.*). However, the mild limitations for lifting, carrying, pushing, and pulling assessed by Dr. Ganesh are largely consistent with the RFC. Moreover, the ALJ's analysis shows that in assessing some more restrictive limitations, i.e., sedentary work, she also relied on the opinions of other medical sources, as well as treatment notes, clinical findings, and diagnostic testing. (R. 16–18). It is well-settled that an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole," even if that finding does not perfectly correspond with any of the opinions of cited medical sources. *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). Thus, the ALJ did not err in

8

accepting some of Dr. Ganesh's findings and fashioning an RFC that was consistent with the record as a whole. *See also Tammy Lynn B. v. Comm'r of Soc. Sec.*, 382 F. Supp. 3d 184, 195 (N.D.N.Y. 2019) (noting that an ALJ may consider a medical opinion with "few or no exertional limitations and then relying in part on the combined force of other record evidence. . . assign certain limitations that result in a *more* restrictive RFC finding") (emphasis in original).

### b) Dr. White and P.A. Stevens

On December 12, 2017, P.A. Stevens completed a Medical Source Statement, which was adopted and signed by Dr. White as supervising physician.[2] (R. 633–36). Plaintiff's symptoms included chronic back pain, leg pain, numbness in the right leg, and weakness on the right side, with mild relief from spinal and trigger point injections. (R. 633). Dr. White diagnosed chronic back pain and opined that Plaintiff could stand and sit for 15 and 30 minutes at one time, for 4 hours (each) in an 8-hour workday, and that she needed flexibility to sit and stand at will and to take hourly unscheduled breaks for up to 20 minutes. (R. 633–35). For workplace activity, Dr. White found that Plaintiff could frequently lift and carry 10 lbs. or less; look down; turn and hold her head; and grasp, turn, or twist objects. (R. 634). Plaintiff could only occasionally: twist, crouch or climb stairs, look up, conduct fine manipulations with her fingers, and reach with her arms; rarely stoop or bend; and never climb ladders and lift 10–20 lbs. (R. 634). Further, Dr. White noted that Plaintiff would be off-task more than 20% of the time, was likely to have good and bad days, would likely be absent more than three days per month because of her impairments or treatments, and that her capacity to work would be limited by cold exposure and anxiety-agoraphobia. (R. 635).

---

[2] During the hearing, Plaintiff testified that she had never actually seen Dr. White. (R. 36). Nonetheless, for clarity and consistency, this Medical Source Statement will be referred to as Dr. White's opinion, even though it was completed by P.A. Stevens.

9

The ALJ accorded some persuasiveness to the opinion of Dr. White. (R. 17). The ALJ found that while the exertional limitations were "somewhat consistent with the record, any limitations related to unscheduled breaks, off-task time and absences are merely speculative." (R. 17–18). Moreover, as to the breaks, off-task time, and absences, the ALJ found that "there is no objective evidence to support such findings" and "[t]hese limitations cannot be accepted without some support, of which there is none." (R. 18). The ALJ explained that Plaintiff "has full strength, she ambulates well, and she is able to maintain her daily activities." (R. 18).

According to Plaintiff, the ALJ did not provide sufficient explanation for dismissing the more restrictive limitations found by Dr. White. (Dkt. No. 19, pp. 24–25). Plaintiff argues that the opinion of Dr. White and P.A. Stevens should have been considered more favorably under the factors set forth at 20 C.F.R. § 416.920c(c). In response, the Commissioner contends that the ALJ gave sound reasons for dismissing portions of Dr. White's opinion related to breaks, off-task time, and absences. (Dkt. No. 24, pp. 17–18).

Upon review of the record, the Court finds that the ALJ properly addressed the supportability and consistency of Dr. White's opinion. There is no dispute that Plaintiff suffers from limitations in the lumbar spine, and the ALJ accorded some persuasiveness to the exertional limitations found by Dr. White. But the ALJ correctly pointed out that there was little to no objective medical evidence that Plaintiff would be off-task more than 20% of the time, miss more than three days per month because of her impairments or treatments, and need hourly unscheduled breaks for up to 20 minutes. (R. 17–18). The ALJ also explained that the more restrictive limitations found by Dr. White were inconsistent with Plaintiff's daily activities, which included cooking, cleaning, laundry, shopping, showering, childcare every other week and weekend, and getting dressed. (R. 33–34, 569, 572).

Further, the ALJ explained that Dr. White's assessment was largely inconsistent with Plaintiff's treatment notes. (R. 17–18). In particular, the treatment notes of P.A. Stevens, Dr. Thomas Haher, and the New York Spine & Wellness Center showed that Plaintiff's gait was mostly normal, she could independently mount and dismount the examination table, she had normal cognitive functioning, and she was taking medications and receiving trigger point and nerve block injections which provided some relief. (*See, e.g.*, R. 252, 348, 747, 907, 915, 920–21, 933). While most treatment records indicate that Plaintiff had back pain, some also describe Plaintiff's health as "excellent" and without any notable back pain. (R. 369, 372–73, 546–47, 653 662–63, 708, 746). Indeed, the records show that Plaintiff sometimes gave completely different accounts of her pain to different providers on the same day. *See* R. 546, 609, 750, 817. And it was within the discretion of the ALJ to resolve any such conflicts in the record. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).

Nor did the ALJ err in failing to explicitly discuss other 20 C.F.R. § 416.920c factors with regards to Dr. White's opinion. Arguably, the ALJ should have recognized that Dr. White's opinion was built upon Plaintiff's long treating relationship with P.A. Stevens, who is an acceptable medical source per 20 C.F.R. § 416.902(a)(8). However, the Regulations make clear that the ALJ is *not required* to explain whether and how she considered the medical source's treating relationship with a claimant, unless there are equally persuasive medical opinions about the same issue, which was not the case here. *See* 20 C.F.R. § 416.920c(b)(2–3).

In sum, the Court finds that the ALJ cited substantial evidence in discounting the opinion of Dr. White, particularly Plaintiff's treatment notes, clinical findings, and diagnostic testing. Further, the ALJ's decision shows that she used this evidence, in combination with the opinions

11

of Dr. Ganesh and Jeanne Shapiro, Ph.D., to formulate a detailed RFC that accounted for Plaintiff's limitations. Thus, the Court finds that the RFC is supported by substantial evidence.[3]

### 2. Available Jobs

Finally, Plaintiff argues that the ALJ did not cite substantial evidence in finding that she can perform a significant number of available jobs. (Dkt. No. 19, pp. 20–22). Specifically, Plaintiff contends that the ALJ's finding that she could do the job of a document preparer is inconsistent with the mental limitations in her RFC. (Dkt. No. 19, pp. 22–23). In response, the Commissioner argues that the ALJ relied on substantial evidence in the testimony of the vocational expert. (Dkt. No. 24, pp. 24–25).

In general, although the Federal Rules of Evidence do not apply in Social Security proceedings, an ALJ may only rely on a vocational expert's testimony when it rests on a sufficient foundation, for example "personal experience, labor market surveys, and published statistical sources." *See Jones-Reid v. Astrue*, 934 F. Supp. 2d 381, 407 (D. Conn. 2012), *aff'd*, 515 F. App'x 32 (2d Cir. 2013). Here, Plaintiff's challenge to the vocational expert's testimony exposes a more fundamental problem. The vocational expert testified that someone with Plaintiff's RFC could perform the requirements of document preparer and addresser, for which there were 44,595 and 7,790 available jobs, respectively. (R. 52). But the vocational expert did not identify the basis for his opinion, beyond citing a vague "national employment estimate." (*Id.*). The vocational expert also testified that his opinion was consistent with the Dictionary of Occupational Titles ("DOT"). (*Id.*). But the DOT only defines occupations—it does not specify

---

[3] Plaintiff has not specifically challenged the portion of the RFC relating to mental impairments. Nonetheless, the Court has reviewed the record and finds that the ALJ's assessments of Dr. Shapiro's opinion and Plaintiff's mental impairments are supported by substantial evidence, including voluminous treatment notes regarding her symptoms, diagnoses, and pharmacologic and therapeutic treatments. (*See e.g.*, R. 558, 569, 578–88, 604–23, 626–29, 820, 822–23, 825–26, 830–60).

numbers of available jobs.[4]  Moreover, the DOT definitions cited by the vocational expert are comically out of date.  The definition for document preparer refers to preparing documents *for microfilm*, a lost art perhaps still practiced by a few Luddites and anachronistic librarians.[5]  *See* DOT Code 249.587-018.  Similarly, the definition for addresser refers to literally addressing items for mailing by hand or typewriter, which fails to account for minor recent inventions such as the computer and the internet.  *See* DOT 209.587-010.

      Of course, there may be a modern version of these jobs, for example scanning/digitizing documents, but without some explanation by the vocational expert, the Court can only speculate. Simply put, the vocational expert's conclusory testimony lacked a sufficient foundation, and therefore, it did not constitute substantial evidence for the ALJ's finding that Plaintiff can perform a significant number of available jobs.  Since remand is necessary for further testimony by the vocational expert on this issue, the Court declines to address his opinion that someone with Plaintiff's RFC can do the job of a document preparer—as that opinion may be subject to further questioning and development.  *See also Corey S. v. Commr. of Soc. Sec.*, 5:20-CV-0678, 2021 WL 2935917, at *12, 2021 U.S. Dist. LEXIS 129931, at *36 (N.D.N.Y. July 13, 2021) (remanding for further administrative proceedings where "the ALJ could not reasonably rely solely on the VE testimony that there were approximately 45,000 document preparer positions in the national economy that Plaintiff could perform," in light of "the overwhelming evidence that the document preparer position, as defined in the DICOT, is obsolete in the national economy").

---

[4] *See* Appendix C, Dictionary of Occupational Titles (4th ed., Rev. 1991), available at http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM (last visited September 22, 2021).

[5] *See also Zacharopoulos v. Saul*, 516 F. Supp. 3d 211, 222 (E.D.N.Y. 2021) (noting the "trajectory [for microfilm] resembles that of carbon paper and punch cards" and it "strains credibility to suggest that there are a 'substantial' number of positions available in a moribund industry").

IV.   **CONCLUSION**

After careful review of the record, the Court concludes that the ALJ applied the correct legal standards and cited substantial evidence in assessing Plaintiff's RFC.  However, the ALJ did not cite substantial evidence in the step five determination that Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy.  As discussed above, the Court must remand for further administrative proceedings to determine whether there are jobs that exist in significant numbers that Plaintiff can perform.

For the foregoing reasons it is

**ORDERED** that the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this Memorandum-Decision & Order; and it is further

**ORDERED** that the Clerk of the Court provide a copy of this Memorandum-Decision and Order to the parties in accord with the Local Rules of the Northern District of New York.

**IT IS SO ORDERED.**

Date: September 22, 2021
      Syracuse, New York

Norman A. Mordue
Senior U.S. District Judge